The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Francisco Oscar Grullon, appeal number 191780. Attorney Dahlberg, please introduce yourself on the record. Good morning and may it please the court, Drew Dahlberg, appointed counsel on behalf of the appellant Oscar Grullon. With your permission, I'd like to reserve two minutes for rebuttal. Yes, you may have it. Thank you, Your Honor. We are here today because Mr. Grullon's trial and his sentence were riddled with errors. And if I may, I'd like to begin at the end and address the two fundamental flaws with Mr. Grullon's sentence. First, the district court committed clear error in its calculation of losses attributable to Mr. Grullon's conduct. There was no evidence, none whatsoever, connecting Mr. Grullon to Brookline Bank. Two witnesses from Brookline Bank testified at trial. Neither had ever seen Mr. Grullon in their lives. The paragraphs of Mr. Grullon's pre-sentence report that address Brookline Bank, which you can find at page nine of the sealed supplemental appendix, do not even mention Mr. Grullon. There is no basis to attribute to Mr. Grullon the $165,000 that Mr. Cohen laundered through Mr. Cohen's own Brookline Bank IULTA account. And here's why it matters. If the district court had excluded that $165,000 from its loss calculation, Mr. Grullon's base offense score would have been two levels lower. Nor does the record reveal any connection between Mr. Grullon and Century Bank. At trial, again, the government offered two witnesses from Century Bank. Of the two, only one had ever seen Mr. Grullon, and that witness observed him once and could not say when. All he knew was it was not the year 2011. Again, the PSR's account of the evidence relating to Century Bank at page eight of the sealed supplemental appendix does not mention Mr. Grullon. And all of the activity at these banks predates Mr. Grullon's involvement in the scheme. And while a conspirator may, of course, be held to account for losses reasonably foreseeable by a participant in that conspiracy, as this court has made clear, losses that arise before a defendant joins a conspiracy are not foreseeable as a matter of law. That is the holding of Ocampo and the same facts present here compel the same conclusion. The district court also committed clear error when it enhanced Mr. Grullon's sentence based on his role in the offense. The sentencing guidelines tell us that the role in the offense adjustment exists, quote, primarily because of concerns about relative responsibility. And in Galindo Serrano, this court stated that it would examine arguments that a sentencing error had been committed based on a disparity of the sentence. Now, Ocampo, excuse me. If you read the sentencing transcript, it seems that, like the district court judge makes the point, having presided over a trial, two trials, I think, having been involved in sentencing proceedings, he took the view that your client was actually more central to this entire crime than Mr. Cohen was. And he said that very, very, very explicitly. So I don't know how you can try to marginalize or diminish your client's role in light of that very explicit finding by the district court. Well, it's a great question. Five minutes remaining. Thank you. It's a good question. I think what is clear, notwithstanding those statements from the sentencing court, is that Mr. Cohen, too, played a significant role and continued the conspiracy for 13 months after Mr. Grillon had left the country with Mr. Gonzalez-Pabon, the alleged member of the conspiracy who was directed by Mr. Grillon. And so the point is, if Mr. Cohen, who recruited, undisputably, recruited Mr. Gonzalez-Pabon into this conspiracy, flew him from Florida to Boston, met him at Logan Airport, put him up in his home, and directed him without Mr. Grillon, even in the country, for 13 months, all of that conduct clearly sufficient under Prang and this court's other precedents, so straight, to warrant the enhancement for a role in the offense, it was clear error to not, to apply that enhancement to Mr. Grillon, but not to Mr. Cohen. If one warranted it, they both did. The failure to give it to both was clearly erroneous, and this court is allowed to look at the sentencing court for the same two members of the same conspiracy, both of whom allegedly supervised the same actor in this scheme, and find the error erroneous. Counselor, at one point, the court indicated that it was giving a more lengthy sentence because your client would not be able to pay restitution. What was your response to that? It just struck me as odd that one gets more prison time if one has an inability to pay money. I completely agree, Your Honor, and I think it's particularly problematic when that assessment was based on the wrong amount of damages. As I said, there was no evidence tying Mr. Grillon to the hundreds of thousands of dollars that the court thought somebody should repay to the government at Brookline Bank at Century Bank. Mr. Delberg, I believe the precise question was, how did you respond at the time, not what you're saying to us now about the issue? Sure. Did you make these statements to the district court? Did you object that that was not an appropriate basis? Well, I was not trial counsel, but... I know, but you stand in the shoes of trial counsel for these purposes, all right? So answer the question. I'm not sure an objection was raised on that basis. Okay. But I do agree that there is a fundamental error here with the sentence, which is based on an erroneous attribution of losses, a complete misapplication of the concept of foreseeability. I mean, everyone agreed at this trial that Mr. Grillon could not be held accountable for losses that were incurred by the conspiracy after he left the country. So to charge him with losses before he joined the conspiracy is clear error. Oh, please go ahead. You know, go ahead, Judge. Just on the loss issue, I mean, it's a preponderance of the evidence standard. I mean, there were, as I understand it, there were two witnesses who purported to have seen your client, I think with Mr. Cohen, at the bank during this time frame. And then there is this phone conversation where there are references to Jose, and there is testimony that there was at least an understanding that it was your client was the other end of that phone call in the relevant time period. Now, I understand that you challenge how reliable that evidence is, but what would prevent the district court from crediting that testimony to the extent that it did and making the loss determination that it did? Well, Judge Lopez, I would say, first of all, there is no witness ever who observed Mr. Grillon at Brookline Bank. And I think you do have to look at it bank by bank. The testimony from the witnesses at Brookline Bank was they had never seen Mr. Grillon in their life. There was not surveillance footage of him ever withdrawing a check, depositing a check in a parking lot, which was in marked contrast. Time has expired. Go ahead, answer. Thank you. And I'll be brief. But there simply was no evidence at all, tying him to Brookline Bank. At Century Bank, the evidence you referred to was a security officer who testified that he saw Mr. Grillon arrive at that bank once, and he couldn't say when. I don't think that's enough, even under a preponderance standard, to establish Mr. Grillon's involvement at Century Bank. And this phone call... Okay, thank you. Judge Thompson, I think, had a question. No, that's okay. Judge Lopez read my mind. Okay. Thank you, Honors. Thank you. Thank you, Mr. Delberg. You can mute your device at this time. And, Attorney Wan, please unmute your device and introduce yourself on the record. Good morning, Your Honors. This is Elisa Wan for the appellee in the United States of America. Proceed, please. Your Honors, I'll pick up where appellant left off regarding the loss amount. With respect to Brookline Bank and Century Bank, the record is clear that the trial court and the jury received evidence that Mr. Grillon was involved in both of those banks. Not only was he running a business called 80 Professional, which was used as Mr. Cohen's excuse or Mr. Cohen's explanation for the checks, but also the jury convicted him of four counts of conversion of government property related to checks that were deposited at Century Bank and Brookline Bank. That's indictments count two through five. You just said Mr. Cohen. Excuse me. I apologize. Mr. Grillon was convicted of counts two through five. And Mr. Grillon was and those checks were deposited at Century Bank and Brookline Bank. What about his argument that he hadn't joined the conspiracy at that point? And are you saying the same evidence proves that that is not an accurate assertion? That's correct, Your Honor. Even the appellant concedes that Grillon was the source of the checks. There was no, there was a clear division of labor and Grillon was the source of the checks until he left for the Dominican Republic. And only then was Cohen able to procure checks. There is no evidence that anyone other than Grillon was able to procure the checks at the beginning of the scheme. And there does not need to be an appearance at a bank in order to be part of the conspiracy. The district court himself held at sentencing that Mr. Grillon, in his view, was the behind the scenes architect and the driving force behind this scheme. And that he arranged to stay in the background and take advantage of others who were the faces of the conspiracy and took the risks associated with being the face of the conspiracy. Okay. Additionally, if I could address the appellant's argument regarding Mr. Cohen's sentence, I believe there is no disparity between the sentence. First of all, any, the posture before the sentencing court in Mr. Cohen's case was very different from the posture and the Mr. Cohen was tried before the same district court, but the co-conspirator Duvin Gonzalez did not testify at Mr. Cohen's trial. So the information about Mr. Grillon and Mr. Cohen directing Mr. Gonzalez to open bank accounts, deposit checks, etc. was not present before the district court at the time of sentencing. And the district court found that there wasn't sufficient evidence of direction for an organizer, leader, manager enhancement for Mr. Cohen. Either way, it's irrelevant because under Prang, the only thing that the government needs to prove to support the enhancement is one act directing one actor at one time. And that is proven over and over again through Mr. Gonzalez's testimony. Mr. Gonzalez testified that Grillon described the job to him, directed him to become the treasurer of 80 professional, directed him to deposit treasury checks and make cash withdrawals. Also, at the time Mr. Cohen was tried, is it that the government had not secured Mr. Gonzalez's cooperation? Your Honor, I believe Mr. Gonzalez was cooperating at the time. And my understanding is that Mr. Gonzalez was subjected to two days of cross-examination about various lies that he had told. Five minutes remaining. But why was he called at one trial if he was cooperating at the time Mr. Cohen was tried, but not the other? I believe that there was more evidence in Mr. Cohen's trial showing his direct relationship with the banks. Again, he was the face of the banks. It was his IULTA account that was being used. That evidence wasn't present for Mr. Grillon. And as a result, Mr. Gonzalez was a necessary witness to explain the conspiracy. It's just, it's a two and a half year difference in incarceration. It just strikes me as once again, particularly given the statement that he couldn't pay restitution, which as Judge Lynch mentioned, wasn't specifically objected to, but it has been raised on appeal. We might tackle it for plain air. So could you address that? Well, Your Honors, I believe that the disparity in the sentence is relevant to the extent that there are not different facts. Let me restate that. The disparity in the sentence should also take into account the different role in that offense. And I think the district court saw a very different role for both Mr. Grillon and Mr. Cohen. He saw Mr. Grillon as not only the mastermind of the scheme, but also a sort of corrupter. Mr. Cohen was a lawyer, a practicing lawyer who, as the district court stated at sentencing, had a lifetime of good deeds and seemed less culpable than Mr. Grillon, who was the source of the checks, seemed to use Mr. Cohen as a front or a fall person for the scheme. So I believe what you've just argued is that stray statement really didn't affect the I think that stray statement was one of many factors and a very small factor amongst the considerations that the court made in determining the different sentence. And I should also note that the two defendants had different criminal history levels, and that also motivated the difference in sentence. Anything else? Your Honors, I haven't addressed the issues of the PSR or the Agent Clark issue, but unless the court has any questions, I will rest on the briefs. I have done as to those issues. I ask my colleagues. I'm good with those. No questions. Okay. Thank you, Ms. Swan. Thank you, Your Honors. Thank you, Ms. Swan. Please mute, and at this time, Attorney Dahlberg, please unmute your device and reintroduce yourself on the record. Back on the record. This is Drew Dahlberg for the appellant, Mr. Grillon. Can everyone hear me? Yes. Yes. Proceed. Thank you. I'd like to respond just briefly to a few things that opposing counsel said. First, as the court is well aware, ability to pay is not a factor enumerated in Section 3553 in terms of factors a court should consider when imposing a sentence. But I don't know here, but we've had plenty of restitution cases where the defendant, in fact, has funds, maybe abroad, and nonetheless claims poverty and no ability to pay. District courts are skeptical when they are faced with such assertions. I'm not sure what the district court was referring to here, but I don't think it necessarily follows that it was a comment about ability to pay. Perhaps it was. And it's not clear to me either. Certainly, there was no argument made by the defendant that he would be unable to pay. I think it was sort of a sua sponte. After this conviction, you'll be sent back to the Dominican, and we cannot, as a legal matter, extract money from you that is in the Dominican, and therefore, I will sentence you to a longer term. So, the judge was rejecting his argument that he should be given a break because if he's sent away, his earning power diminishes. Correct? Yes, Your Honor. And the other thing we just heard that I thought was striking was Mr. Gonzales-Pabon was a... Did we just lose a judge? Yes. All right. Should we wait for a judge? Yes. All right. Please proceed. Thank you, Your Honor. Attorney Wan referenced a clear division of labor, and that, again, harkens back to what this court said in Al-Rakabi, which is that you're not supposed to enhance someone's sentence as a leader or manager when each member of a conspiracy sort performs a distinct and sequential role in a scheme. Time has expired. All right. Thank the court for your resolution. Thank you. Thank you. Attorney Dahlberg and Attorney Wan, you may disconnect from the meeting at this time. That concludes the argument in this case.